**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **KENNETH C. STOVER, JR.,** ) | **Case No. 1:08 CV 28** |
| ) | **Case No. 1:02 CR 239** |
| Petitioner-Defendant, ) | |
| ) | **Judge Dan Aaron Polster** |
| vs. ) | |
| ) | **MEMORANDUM OF OPINION** |
| **UNITED STATES OF AMERICA,** ) | **AND ORDER** |
| ) | |
| Respondent-Plaintiff. ) | |

Before the Court is the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Filed by Petitioner Kenneth C. Stover, Jr. under 28 U.S.C. § 2255 (Case No. 1:08 CV 28 ("Civ. Case"), **ECF No. 1**; Case No. 1:02 CR 239 ("Crim. Case"), **ECF No. 1126**) (collectively, "Motion"). The Government has filed a response in opposition to the Motion. (Crim. Case, ECF No. 1137.) The Court has reviewed the briefs and the record and, for the reasons recounted below, **DENIES** the Motion without a hearing.

**I.**

Following a jury trial, Petitioner Kenneth C. Stover, Jr. was convicted of one count of conspiracy to possess with intent to distribute more than 5 kilograms of cocaine (Count 1), one count of attempting to possess with intent to distribute more than 5 kilograms of cocaine (Count 12), one count of conspiracy to possess with intent to distribute at least 50 but less than

100 kilograms of marijuana (Count 19), two counts of unlawful use of a communication facility (Counts 98, 108), one count of possession of ammunition by someone previously convicted of a felony (Count 123), and one count of possession of a firearm in furtherance of drug-trafficking activities (Count 124). By virtue of two prior drug convictions, Stover was sentenced to a mandatory term of life in prison for Counts 1 and 12.[1] Stover raised two issues on direct appeal. He challenged the sufficiency of the evidence supporting the jury verdicts that he (1) conspired to distribute five or more kilograms of cocaine and (2) possessed a firearm in furtherance of his drug-trafficking activities. The Sixth Circuit rejected these arguments and affirmed the convictions.

Stover then filed the pending § 2255 Motion challenging the constitutionality of his convictions based on prosecutorial misconduct, ineffective assistance of counsel and denial of due process. He also challenges the application of 21 U.S.C. § 851 sentencing enhancements to his cocaine convictions.

**II.**

Under 28 U.S.C. § 2255, a federal prisoner may challenge the validity of his conviction or sentence. *Id*. In order to prevail on a § 2255 motion alleging constitutional error, a petitioner is required to establish by a preponderance of evidence "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citation omitted). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner is required to establish by a

---

[1]Stover was also sentenced to prison terms of 168 months for Count 19, 48 months for Counts 98 and 108, and 60 months for Count 124. Only the 60-month sentence for Count 124 was to be served consecutively.

preponderance of evidence "a fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Id.*

**III.**

**A.**

Stover argues that the Government engaged in misconduct by failing to provide materials favorable to the defense, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  In order to prove a *Brady* violation, a defendant must show that (1) the evidence at issue was favorable to him, either because it was exculpatory or impeaching; (2) the evidence must have been willfully or inadvertently suppressed by the Government; and (3) prejudice resulted. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (citation omitted).  This claim is meritless.

The drug conspiracy uncovered in this case resulted in the indictment of fifty persons and the conviction of all but a few.  Evidence of the defendants' guilt came primarily from court-authorized interception of the conspirators' telephone and cell phone conversations, law enforcement surveillance, drug ledgers seized during searches, and the testimony of Stover and his co-conspirators.  The evidence revealed a conspiracy to distribute cocaine and marijuana entering the United States from Mexico at Brownsville, Texas, which was then shipped in trucks to Cleveland, Ohio where it was distributed to Cleveland area residents by Stover and others.  Stover testified that he dealt these drugs from his father's home to numerous customers, and that he sold drugs at local bars and strip clubs.  (Trial Tr. 888-97.)  Stover admitted that he was voluntarily involved in the marijuana conspiracy.  (Id. 910-11.)  He acknowledged that he was involved in the cocaine conspiracy in amounts significantly greater than the 5 kilograms of cocaine for which he was convicted (Id. 883-89), but claimed that he was forced to participate in

that conspiracy under duress (specifically, under Jorge Mercado's threat of bodily harm to himself and his parents). (Id. 789-799.) He was unable to prove this defense, however, in the face of overwhelming evidence showing that, as late as May 2002, Stover was calling Jorge on a daily basis begging Jorge for cocaine (despite Jorge's protestations) because Stover said his customers were looking for it and he needed the money. (Trial Tr. 902-925.)

Stover now argues that his convictions were obtained by prosecutorial misconduct. This claim is based on Count 84 of the superseding indictment. (Crim. Case; ECF No. 166, at 91) Count 84 charged Jorge Mercado and Robert Roberts with unlawful use of a communication facility in conducting a drug transaction, as recounted in an intercepted phone conversation between Jorge Mercado and Robert Roberts beginning at 2:10 p.m. on April 12, 2002. (Id.) Stover claims that Jorge Mercado's telephone line was not yet monitored at that time; therefore, there must be missing tapes of monitored phone conversations favorable to his duress defense that the Government withheld, and that all monitored calls subsequent to the one charged in Count 84 should have been suppressed as fruit of the poisonous tree.

Although Jorge Mercado's telephone line was not monitored on April 12, 2002 at 2:10 p.m., Julio Mercado's line was. (Crim. Case; ECF No. 1138.) That is the line upon which Count 84 is based. The monitored call was placed by Robert Roberts who used Julio's phone to call Jorge. (Id.) Thus, the premise upon which Stover's argument rests is baseless. There is no *Brady* violation or any other evidence of prosecutorial misconduct.

**B.**

Next, Stover argues that his trial attorney, Gary Eisner, Esq., was ineffective because (1) he failed to file a motion to suppress the allegedly missing wiretaps; (2) he failed to

-4-

file a motion to suppress the search warrant; and (3) he failed to object to allegedly misleading jury instructions.

Claims of ineffective assistance of counsel are analyzed under the two-prong standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the defendant must show that counsel's performance fell below an objective standard of reasonableness.  This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that there is a reasonable probability that, but for counsel's deficiency, the outcome of the proceedings would have been different.  This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial – a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the "conviction resulted from a breakdown in the adversary process that renders the result unreliable."  *Strickland*, 466 U.S. at 694.

When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-88.  In doing so, the proper measure of attorney performance simply remains reasonableness under prevailing professional norms.  *Id.*  Thus, in any case presenting an ineffectiveness claim, the performance inquiry must rest on whether counsel's assistance was reasonable considering all of the circumstances.  *Id.*  Such a review of counsel's performance must be highly deferential and requires the Court to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

### 1. Trial Counsel

Stover argues that "[w]ith evidence strongly favoring that tapes were missing," he asked his trial counsel to file a motion to suppress – and that trial counsel's failure to file the motion to suppress rendered his assistance constitutionally ineffective. (Motion 5.) As discussed *supra*, at 3-4, however, Stover has made no showing whatsoever that there were any missing tapes. Therefore, he cannot show that his trial attorney was ineffective for failing to file a motion to suppress wiretaps based on missing tapes.

Stover next claims that his attorney was ineffective for failing to file a motion to suppress the evidence uncovered during the search of his residence on the basis that the search commenced two hours before the Magistrate Judge signed the search warrant. (Motion 5-6.) He claims that his attorney refused to raise this issue at trial even though Stover encouraged him to do so. (Id.) This claim fails for two reasons.

Stover's attorney did in fact raise this issue at trial. (Trial Tr. at 622-631.) The issue was discussed at length and the Court pointed out that it was too late to file such a motion, but allowed counsel to question the officer executing the search about the apparent time problem, which he did. (Id.) Thus, Stover cannot show that counsel's performance fell below an objective standard of reasonableness.

Even if Stover could show that counsel's performance was objectively unreasonable, he is unable to show that he was prejudiced by his attorney's failure to file such a motion. The evidence at trial, including Stover's own testimony, roundly established that Stover played a substantial role in a wide-ranging drug-trafficking conspiracy. Of particular note, Stover admitted receiving between nine and thirteen kilograms of cocaine from the Mercados on

one occasion in May 2002.  Evidence also established that he was arrested on May 28, 2002 when he attempted to take possession of what he thought was ten kilograms of cocaine.  His convictions for Count 1 (conspiracy to distribute more than 5 kilograms of cocaine) and Count 12 (attempted possession with intent to distribute more than 5 kilograms of cocaine) alone required mandatory life prison sentences.  In contrast, the search of Stover's residence uncovered, in a night stand next to his bed, a loaded handgun, ammunition and a scale with trace amounts of cocaine.  Even if the evidence found in Stover's nightstand had been suppressed, only the ammunition count would have been dismissed.  Although the prison sentence for this count was 60 months consecutive to his other charges, it would have had no practical impact on his mandatory life prison sentences.

Next, Stover argues that his trial attorney was ineffective for failing to object to "misleading jury instructions."  The allegedly misleading instructions relate to the Court using Stover's name when explaining the verdict forms to the jury.  Stover claims that the use of his name was prejudicial and his attorney was ineffective for failing to object.  This claim lacks merit.  Stover was one of the defendants tried simultaneously for the conspiracy counts and the cell phone counts.  When it was time for the Court to read the verdict forms, the Court simply described how the verdict forms were organized and read Stover's verdict form for those particular counts (i.e., Counts 1, 19, 98 and 108) as an example – rather than read all of the verdict forms which would have taken up a considerable amount of time.  (Trial Tr. 1124-1130.)  There were no errors in the verdict forms and there were no misstatements of law.

Stover further claims that the "misleading" nature of these instructions was compounded by the fact that the Court read the verdict forms only five minutes after closing

-7-

arguments concluded. Federal Rule of Criminal Procedure 30(c) allows the court to instruct the jury before or after the closing arguments are completed, or at both times. It is the Court's practice to read the instructions regarding what constitutes evidence and how to evaluate it, the relevant burden of proof, and the applicable law before allowing counsel to begin their closing arguments. The purpose for doing this is to keep these particular instructions fresh in the minds of the jury when the attorneys are making their legal arguments. The only instructions that remain to be read after closing arguments are the instructions regarding the jury's deliberations and how to fill out the verdict forms. Stover has failed to show that the Court made any error, that counsel was deficient for failing to make a meritless objection, or any resulting prejudice.

Finally, Stover argues that trial counsel was ineffective for failing to present the "most substantial" evidence supporting his duress defense, that is, a tape from his answering machine containing Jorge Mercado's threatening messages. (Motion 7-8.) According to Stover, his attorney was responsible for damaging the alleged tape and was thus unable to play it for the jury. This argument also lacks merit. Although it appears that there was a tape (Trial Tr. 789), Stover testified at trial that the tape was "distorted" (id. 924). He did not blame the Government for that distortion, nor did he blame his attorney. (Trial Tr. 924.) In the absence of any other evidence, the Court presumes that counsel's decision not to use the alleged tape was sound trial strategy. In any event, Stover was aware of this issue during the trial proceedings and should have raised it on direct appeal. Because he waived it, it is not properly before the Court on collateral review. *Strickland*, 466 U.S. at 689; *Monzo*, 281 F.3d at 579; *Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).

### 2. Appellate Counsel

Stover argues that his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct appeal. (Motion 3.)  The Supreme Court has made clear, however, that it is preferable in most cases for ineffective assistance of counsel claims to be raised in Section 2255 proceedings rather than on direct appeal.  See *Massaro v. United States*, 538 U.S. 500 (2003).  Following *Massaro*, the Sixth Circuit has routinely concluded that such claims are best brought by a defendant in a § 2255 proceeding "so that the parties can develop an adequate record on this issue."  *United States v. Weldon*, No. 06-6463, 2008 WL 904731, at *1 (6th Cir. Apr. 2, 2008) (citing *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (citations omitted)).  Accordingly, this claim fails.

Stover argues that appellate counsel was ineffective for doing such a poor job on appeal.  Specifically, Stover claims that counsel was ineffective for raising a "dead bang looser [sic]" of an issue when he argued that there was insufficient evidence supporting the drug amount for which Stover was convicted. (Motion 8.)  Stover also argues that counsel was ineffective for presenting what the Sixth Circuit characterized as a "wrong legal argument" when he challenged the sufficiency of the evidence on the firearm charge alleged in Count 124.  (Id. at 9.)

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel as well as trial counsel.  *Lewis v. United States*, No. 98-6140, 1999 WL 623350, at *3 (6th Cir. Aug. 9, 1999) (citing *Bowen v. Holtz*, 763 F.2d 191, 194 (6th Cir.1985)).  However, an appellant has no constitutional right to have every non-frivolous issue raised on appeal.  *Id*. (citing *Jones v. Barnes*, 463 U S 745, 750-54 (1983)).  While it is possible to bring a *Strickland*

claim based on appellate counsel's failure to raise a particular claim, it is difficult to demonstrate that counsel was incompetent. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Tactical choices regarding what issues to raise on appeal are properly left to the sound professional judgment of appellate counsel. *Lewis*, 1999 WL 623350, at *3 (citing *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990)).

Although the Court agrees that the sufficiency of evidence argument relating to the amount of cocaine that was raised by counsel on direct appeal was weak, Stover has failed to cite one case holding that appellate counsel is constitutionally ineffective for raising a losing argument on appeal, or explain how he was prejudiced. Put another way, Stover has not identified any meritorious argument that appellate counsel <u>failed</u> to raise. *Gray*, 800 F.2d at 646.

## C.

Stover contends that he was denied due process because the Court did not permit him to confront Jorge Mercado, presumably at trial. Stover alleges that Jorge threatened him and, because Jorge "had a relationship with law enforcement officials," Stover "had no one to run to." (Motion 9-10.) The Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. U.S. CONST. amend. VI. The "confrontation clause" of the Sixth Amendment provides defendants with the right to face those who testify against them and to cross examine them. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). The record shows that Stover's trial counsel cross-examined Jorge Mercado extensively at trial. (Trial Tr. 731-787.) Counsel questioned Jorge about his possible bias due to his plea bargain with the Government;

impeached Jorge with prior inconsistent statements, and grilled Jorge about his alleged threats against Stover and his father. (Id.) While the Confrontation Clause insures that a defendant be provided an opportunity for effective cross-examination, does not require counsel to cross-examine witnesses in whatever way the defendant wishes. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). The mode of cross-examination is delegated to counsel, not the defendant. The presumption of attorney competence operates with particular force when the conduct at issue related to counsel's mode of cross-examination. "Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (inner quotation omitted). *See also United States v. Steele*, 727 F.2d 580, 591 (6th Cir. 1984) (holding that cross-examination fell "within the area of trial tactics and strategy that should not be subjected to second guessing and hindsight" by the court)); *Davie v. Mitchell*, 291 F.Supp.2d 573, 604 (N.D. Ohio 2003) (holding same). Although Stover may have preferred different questions or a different manner of questioning, he has failed to show how counsel's cross examination of Jorge Mercado deprived him of due process.

**D.**

Stover argues that his prior drug-related convictions in 1992 and 1998[2] were not serious enough to warrant sentencing enhancements under 21 U.S.C. § 851. These enhancements required the Court to impose mandatory sentences of life imprisonment for Counts 1 and 12, pursuant to 21 U.S.C. § 841(b)(1)(A). Although Stover filed an objection to the presentence investigation report, (Crim. Case; ECF No. 942), he did not object to the § 851

---

[2] Stover erroneously argues that the second prior conviction occurred in 1997.

sentence enhancements articulated therein, he did not object to them during his sentencing, and he did not raise the issue on appeal. "A defendant may collaterally attack a prior conviction used for purposes of sentence enhancement only if (1) such attack is provided by statute, or (2) such attack is a constitutional one premised on a lack of counsel." *U.S. v. Reed*, 141 F.3d 644, 652 (6th Cir. 1998) (citations omitted). He cannot challenge the validity of the 1992 conviction because it was entered more than 5 years before the indictment issued, 21 U.S.C. § 851(e),[3] and the record shows that he cannot challenge the 1998 conviction because he was represented by counsel when he pled guilty to possession of drugs (for which he was sentenced to one year of community control). *Id*.

### IV.

Based on the foregoing, the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Filed by Petitioner Kenneth C. Stover, Jr. under 28 U.S.C. § 2255 (**Motion**) is hereby **DENIED**.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     May 7, 2008*
**Dan Aaron Polster**
**United States District Judge**

---

[3]Section 851(e) provides:
No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.
The Sixth Circuit has held that this is a constitutionally reasonable time limitation. *U.S. v. Reed*, 141 F.3d 644, 652 (6th Cir. 1998).